Filed 2/14/25  P. v. Matthews CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B332573 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A631516) |
| v. | |
| ANDRE D. MATTHEWS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Teresa P. Magno.  Reversed and remanded with directions.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, David E. Madeo, Lauren N. Guber, and Sophia A. Lecky, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Andre D. Matthews appeals the summary denial of his petition for resentencing under Penal Code section 1172.6 (former section 1170.95).[1]  We conclude the trial court erred because an instruction allowed the jury to convict Matthews of murder based on the natural and probable consequences doctrine. We reverse and remand for the trial court to issue an order to show cause and conduct an evidentiary hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.      Facts

We refer to the factual background from the Court of Appeal opinion affirming the judgment of conviction.  (*People v. Matthews* (Dec. 16, 1991, B041328) [nonpub. opn.].)  These facts are "for background purposes and to provide context for the parties' arguments." (*People v. Flores* (2022) 76 Cal.App.5th 974, 978, fn. 2.)  We do not rely on these facts to review the trial court's determination for Matthews's prima facie showing.  (*Id.* at p. 988.)

### *A.     Ann Trunnell's Testimony*

On March 1, 1985, Ann Trunnell spent the afternoon and evening with Elbert Robinson, Jr.  They bought and smoked rock cocaine.  They first used Trunnell's AFDC check and money from selling her stereo to buy the rock cocaine.  Later, Robinson went to buy more rock cocaine with his associates, Mitchell and "Ant." They went to a "rock house" at the Imperial Courts housing project, where Robinson bought more drugs with Ant's money. Robinson, Trunnell, Mitchell, and Ant went to a friend's apartment to smoke the rock cocaine.

---

[1]      All further statutory references are to the Penal Code. Effective June 30, 2022, section 1170.95 was renumbered section 1172.6 with no change in text.  (Stats. 2022, ch. 58, § 10.)

Robinson left to buy more cocaine. When Robinson returned, Trunnell observed him to be running and breathing hard. After drinking water, Robinson gave $20 to Trunnell, then left to buy more cocaine. Robinson returned with more cocaine and smoked it with Trunnell. Robinson left to buy more cocaine, but did not return.

### B.     Thomas Vandivier's Testimony

Thomas Vandivier worked as a lookout for a rock house run by Matthews, Herman Coleman,[2] and Michael Dorrough[3] in the Nickerson Gardens housing project. They agreed to pay Vandivier $500 per week to watch for police. But Coleman had paid him only $150 for two weeks' work.

In the early morning of March 2, 1985, Vandivier was in the backyard of the rock house and saw Robinson leave. Matthews, Coleman, and Dorrough followed Robinson into a field where all three shot him. Vandivier saw a gun in each of their hands and shots fired from each gun. The three men walked back into the house after Robinson fell.

During his trial testimony, Vandivier admitted that at the preliminary hearing, he testified that he had not seen the shots fired. He also admitted that after the incident, he told a police detective that he had not seen the shooting. Vandivier testified that he had previously lied because someone threatened to hurt him if he said anything. He had been threatened twice since the preliminary hearing.

---

[2]     Coleman was tried with Matthews but was not a party to his appeal.

[3]     Dorrough was tried separately because his case involved the death penalty.

### C.     Linda Toliver's Testimony

Linda Toliver allowed Matthews, Coleman, and Dorrough to sell drugs from her house at the Nickerson Gardens for $300 per week.  On March 1 and 2, 1985, Toliver was in the hospital. Her roommate told her over the phone that Robinson was killed.

On about March 6, 1985, after Toliver had been released from the hospital, Matthews talked to her about Robinson's death.  Toliver asked Matthews why Robinson had been killed. Matthews said they did it because Robinson had robbed someone named Ona Randell and taken $100 from her.  Matthews stated that they should have beaten Robinson but not killed him. Matthews told Toliver that it could have been avoided and he regretted it.  Matthews said that killing Robinson over the incident with Randell was petty.

### D.     Forensic Evidence

A deputy medical examiner determined that Robinson died of multiple gunshot wounds.  Approximately eight of the 15 wounds could have been fatal.

Criminalist Lawrence Baggett examined 13 bullets from the coroner.  He concluded that at least three firearms were used in the shooting.

## II.     Procedure

### A.     Original Trial Court Proceedings and Direct Appeal

On December 6, 1985, a jury convicted Matthews of first degree murder (§ 187, subd. (a)) and found that he personally used a firearm during the commission of the murder (§ 12022.5, subd. (a)).  Matthews admitted two enhancements for serving prior prison terms (§ 667.5, subd. (b)).  The trial court sentenced Matthews to 28 years to life.

Matthews's conviction was affirmed on direct appeal. (*People v. Matthews, supra,* B041328.)

### B.	Resentencing Petition

On June 15, 2022, Matthews filed a petition for resentencing under former section 1170.95. He declared that he could not now be convicted of murder because of the changes made to sections 188 and 189, effective January 1, 2019. On November 30, 2022, the District Attorney filed a response to the petition. On May 8, 2023, counsel for Matthews filed a reply.

On July 21, 2023, the trial court conducted a hearing to determine whether Matthews had made a prima facie showing that he was eligible for relief under section 1172.6. Relying on the prosecutor's closing argument at trial, the court found Matthews was not convicted under a now impermissible theory of murder. The trial court explained, "[W]ithout the closing arguments, it's up in the air as to what theory . . . the jury relied on. But if I'm permitted to consider the closing argument—and I have done that—to me, it's very clear, there is no ambiguity." The court elaborated that the closing argument described Matthews as "the actual perpetrator, as one of the shooters." The court added, "[T]he People did not argue any—any alternative crime in which liability was imputed to him. The People clearly argued that Mr. Matthews had the intent to kill. [¶] And, ultimately, the verdict in which the jury found Mr. Matthews guilty of first degree murder convinces the court that that liability was not imputed so, therefore, Mr. Matthews is not eligible for resentencing pursuant to 1172.6."

**DISCUSSION**

## I.   Changes to Murder Law

Senate Bill No. 1437 (2017–2018 Reg. Sess.) (SB 1437) amended the substantive law on accomplice liability for murder by significantly narrowing the felony murder rule[4] and by requiring that a principal in a crime act with malice aforethought.  (§§ 189, subd. (e), 188, subd. (a)(3); *People v. Curiel* (2023) 15 Cal.5th 433, 448–449.)  Pertinent for our review, the latter change requires that malice "not be imputed to a person based solely on his or her participation in a crime."  (§ 188, subd. (a)(3).)  The change eliminated liability for murder as an aider and abettor under the natural and probable consequences doctrine.  (*Curiel*, at p. 449; *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).)

A defendant convicted of felony murder under the prior law or murder based on the natural and probable consequences doctrine can petition to vacate the conviction and be resentenced on any remaining counts, if he could not now be convicted of murder because of the changes made by SB 1437.  (§ 1172.6, subd. (a); *Lewis*, *supra*, 11 Cal.5th at pp. 959–960.)  Upon receipt of a petition that contains all required information, the trial court must appoint counsel to represent the petitioner, if requested.  (§ 1172.6, subd. (b)(3).)  The court must also direct the prosecutor to file a response to the petition and permit the petitioner to reply.  (*Ibid*.)  If the court determines the petitioner has made a

---

[4]   Specifically, SB 1437 added section 189, subdivision (e), providing liability only if the defendant was the actual killer, was not the actual killer but, with intent to kill, acted as a direct aider and abettor, or was a major participant in the underlying felony and acted with reckless indifference to human life.

6

prima facie case for relief, it must issue an order to show cause and conduct an evidentiary hearing. (*Id.*, subds. (c) & (d)(1).)

The prima facie inquiry is limited. (*Lewis*, *supra*, 11 Cal.5th at p. 971.) The court takes the petitioner's factual allegations as true and refrains from factfinding. (*Id.* at p. 972.) "The record of conviction will necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Id.* at p. 971.) " 'If the petition and record in the case establish conclusively that the [petitioner] is ineligible for relief, the trial court may dismiss the petition. [Citations.] If, instead, the [petitioner] has made a prima facie showing of entitlement to relief, "the court shall issue an order to show cause." (§ 1172.6, subd. (c).)' [Citation.]" (*People v. Curiel*, *supra*, 15 Cal.5th at p. 450.)

Whether the record of conviction shows the petition is ineligible for section 1172.6 relief as a matter of law is a legal question that we review de novo. (*People v. Lopez* (2022) 78 Cal.App.5th 1, 14.)

## II. Optional Bracketed Language in CALJIC 3.00

The error in summarily denying Matthews's section 1172.6 petition turns on the trial court reading CALJIC No. 3.00 (4th ed. 1979 rev.) to the jury. CALJIC No. 3.00 explained the role of principals to a crime. It also included an optional bracketed sentence that stated, "One who aids and abets is not only guilty of the particular crime that to his knowledge his confederates are contemplating committing, but he is also liable for the natural and reasonable or probable consequences of any act that he knowingly aided or encouraged." Although the jury was not required to do so, it could have reasonably understood the

7

instruction to permit convicting Matthews under the natural and probable consequences doctrine.  (*People v. Maldonado* (2023) 87 Cal.App.5th 1257, 1266–1267; *People v. Offley* (2020) 48 Cal.App.5th 588, 599.)

Nothing in the verdict or finding on the firearm allegation precludes the possibility that the jury found Matthews guilty of first degree murder based on the natural and probable consequences doctrine.  First, at the time of Matthews's trial in 1985, a person could be convicted of first degree murder under the natural and probable consequences doctrine.[5]  Second, the jury's true finding on the firearm enhancement—indicating Matthews personally used a firearm—does not necessarily establish he acted with malice.  (*People v. Offley*, *supra*, 48 Cal.App.5th at p. 598.)

The Attorney General cites *People v. Estrada* (2022) 77 Cal.App.5th 941 (*Estrada*), which concluded that the defendant was ineligible for section 1172.6 relief, even though the trial court read an instruction that mentioned the natural and probable consequences doctrine.  In *Estrada*, the trial court instructed the jury with the optional bracketed portion of CALCRIM No. 400, which states, " 'Under some specific circumstances, if the evidence establishes aiding and abetting of one crime, a person may also be found guilty of other crimes that occurred during the commission of the first crime.' " (*Estrada*, at p. 946.)

The reviewing court determined that the bracketed language alone did not sufficiently instruct the jury on the

---

[5]      In 2014, the Supreme Court limited murder convictions under the natural and probable consequences doctrine to second degree murder.  (*People v. Chiu* (2014) 59 Cal.4th 155, 166.)

natural and probable consequences doctrine.  (*Estrada*, *supra*, 77 Cal.App.5th at p. 947.)  The CALCRIM bench notes directed that the bracketed language be read along with CALCRIM No. 402 or No. 403[6] when proceeding under the natural and probable consequences doctrine.  (*Id*. at pp. 946–947 (citing Judicial Council of Cal., Crim. Jury Instns. (2022) Bench Notes to CALCRIM No. 400).)  But the trial court never instructed the jury on CALCRIM No. 402 or No. 403.  (*Estrada*, at p. 946.)  The prosecutor also never requested that the trial court read either to the jury.  (*Id*. at p. 947.)

Instead, the trial court read CALCRIM No. 401, which described aiding and abetting intended crimes.  (*Estrada*, *supra*, 77 Cal.App.5th at p. 947.)  The reviewing court concluded that the jury instructions taken as a whole—including CALCRIM No. 401 on direct aiding and abetting—permitted the jury to find the defendant guilty of first degree murder only if it concluded that he acted with intent to kill.  (*Estrada*, at p. 947.)

The instructions involved in *Estrada* are distinguishable from those involved in Matthews's trial.  The Attorney General points out that the prosecutor never requested, and the trial court never read CALJIC No. 3.02, which discusses the natural and probable consequences doctrine.  But CALJIC No. 3.02 was not created until 1988,[7] three years after Matthews's trial.  At

---

**6**     CALCRIM No. 402 describes the natural and probable consequences doctrine when the target and non-target offenses are charged.  CALCRIM No. 403 describes the natural and probable consequences doctrine when only the non-target offenses are charged.

**7**     The 1988 version of CALJIC No. 3.02 stated:  "One who aids and abets is not only guilty of the particular crime that to

9

the time of Matthews's trial, the bracketed sentence included in CALJIC 3.00 was the only instruction for the natural and probable consequences doctrine until the creation of CALJIC No. 3.02.[8] (*People v. Prettyman*, *supra*, 14 Cal.4th at pp. 263–264.) No instruction supplemented CALJIC 3.00, as did CALCRIM No. 401 on aiding and abetting intended crimes, or CALCRIM No. 402 or 403 on aiding and abetting under the natural and probable consequences doctrine, which were available at the time of the trial in *Estrada*.[9] Unlike the instructions in *Estrada*, the

[his] [her] knowledge [his] [her] confederates are contemplating committing, but [he] [she] is also liable for the natural and probable consequences of any criminal act that [he] [she] knowingly and intentionally aided and abetted. You must determine whether the defendant is guilty of the crime originally contemplated, and, if so, whether the crime charged [in Count[s] ___] was a natural and probable consequence of such originally contemplated crime." (CALJIC No. 3.02 (5th ed. 1988).)

[8] The bracketed language in CALJIC 3.00 was created in the 1976 supplement to the third edition of CALJIC. (*People v. Prettyman* (1996) 14 Cal.4th 248, 263.) The fourth edition, published in 1979, retained the language. (*Ibid*.)

[9] The Attorney General asserts that at the prima facie stage, "courts inquire whether it is reasonably likely that the jury could have relied on [a potentially faulty instruction] to select a now-invalid theory of liability." We need not apply this reasonable likelihood analysis to our review of the prima facie inquiry in Matthews's case. (*People v. Maldonado*, *supra*, 87 Cal.App.5th at p. 1268, fn. 8 ["We need not, and do not, decide whether or to what extent the [reasonable likelihood] standard applies in section 1172.6 cases."].) This case does not involve a faulty or ambiguous instruction such as that reviewed in *Estrada*.

instructions in Matthews's trial would not have required the jury to find he acted with intent to kill in order to find him guilty of first degree murder.

## III. Prosecutor's Closing Argument

The Attorney General also points out that the prosecutor never argued Matthews "was a non-shooter accomplice who merely intended to aid in an uncharged non-homicide crime" or that he "could be held vicariously liable for murder based on the actions of another person." Even if we consider the prosecutor's closing argument,[10] we are unable to conclusively determine from it that the jury did not rely on the natural and probable consequences doctrine. A jury does not need to limit its decisions to theories upon which the prosecutor relied in closing arguments. (*People v. Clark* (2011) 52 Cal.4th 856, 947 ["theories

---

[10] The superior court relied on *People v. Cortes* (2022) 75 Cal.App.5th 198 to consider the prosecution's closing argument at the prima facie showing stage to determine whether it proceeded on any improper theory of liability. But *Cortes* did not specifically hold that closing argument may be considered as part of the record of conviction in determining whether a prima facie showing was satisfied. Unlike Matthews's trial, the trial court in *Cortes* did not instruct on any theory of liability that required imputing malice to him. (*Id*. at p. 205.) The defendant contended that he was still eligible for relief despite the omission of such instructions because the prosecutor stated the law on the natural and probable consequences doctrine during closing argument. (*Ibid*.) The court rejected the argument, stating that the evidence did not support, nor did the prosecutor argue, the commission of any target crime necessary for the natural and probable consequences doctrine. (*Ibid*.)

11

suggested by the prosecutor are not the sole theories the jury may consider in making its determination of guilt"]; *People v. Perez* (1992) 2 Cal.4th 1117, 1126 ["It is elementary . . . that the prosecutor's argument is not evidence and the theories suggested are not the exclusive theories that may be considered by the jury"]; *People v. Raley* (1992) 2 Cal.4th 870, 902 ["[A] jury [is] not bound to accept the prosecutor's argument"]; *People v. Howard* (1992) 1 Cal.4th 1132, 1189 [same].)  A prosecutor's argument " 'should not be given undue weight in analyzing how a reasonable jury understood . . . instructions.' " (*People v. Cortez* (2016) 63 Cal.4th 101, 131.)

Summary denial is appropriate only when the record "conclusively" establishes that the defendant is ineligible for section 1172.6 relief.  (*People v. Strong* (2022) 13 Cal.5th 698, 708.)  Because the record does not conclusively establish Matthews is ineligible for relief, we will reverse and remand with directions for the trial court to issue an order to show cause and hold an evidentiary hearing pursuant to section 1172.6, subdivision (d)(3).  Our determination that Matthews has made a prima facie showing rests on the requirement that his factual allegations are deemed to be true at this stage.  This determination has no bearing on the trial court's decision after the evidentiary hearing where no such requirement applies.

**DISPOSITION**

We reverse the order denying the petition.  We remand the matter with directions to issue an order to show cause and conduct an evidentiary hearing.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

HANASONO, J.*

We concur:

EGERTON, Acting P. J.

ADAMS, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.